IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
December 01, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

| | |
|---|---|
| DAWN ELIZABETH MCCULLOUGH, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 7:25-CV-117 |
| v. | )<br>) |
| MDM SOLUTIONS, LLC, | ) By: Hon. Robert S. Ballou<br>) United States District Judge |
| Defendant. | )<br>) |

**MEMORANDUM OPINION**

Plaintiff Dawn Elizabeth McCullough brings a *Bowman* claim under Virginia common law against her former employer, MDM Solutions, LLC, alleging she was constructively discharged for refusing to engage in criminal conduct. Because McCullough fails to plausibly allege that MDM directed her to violate state law in a way that would expose her to criminal prosecution, or that her working conditions thereafter became so intolerable that she was compelled to resign, MDM's motion is **GRANTED** without prejudice. McCullough is granted leave to file an amended complaint.

I.  **BACKGROUND**[1]

McCullough began working for MDM in June 2020 as an environmental inspector on the Mountain Valley Pipeline in Roanoke County. Dkt. 1 ¶¶ 2, 5. In that role, she was familiar with MDM's legal obligations under federal environmental law. *Id.* ¶¶ 10–11.

---

[1] I accept as true the facts alleged in the Complaint when reviewing a motion to dismiss. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

McCullough alleges that during her employment, her supervisor, John Brcic, instructed inspectors to ignore environmental violations—such as stormwater, erosion, and drainage issues—and to avoid documenting legal noncompliance. *Id*. ¶ 13. From 2022 until her departure in April 2024, MDM allegedly directed McCullough to stop reporting legal violations of environmental issues and to falsify compliance records, despite her having legal reporting obligations of such violations. *Id*. ¶ 25. McCullough also received instructions to certify pipeline work she believed violated the law. *Id*. ¶ 28. Between 2023 and 2024, she reported multiple violations to MDM. *Id*. ¶¶ 12–14, 17, 21.

After raising concerns about Brcic, MDM offered to transfer her to a remote site "if she had a problem with John [Brcic]." Dkt. 1 ¶ 15. She declined. Management later instructed that she was expected to follow Brcic's instructions, even if he told her "to pick up bricks." *Id*. ¶ 16. Despite McCullough's complaints, MDM took no corrective action and ultimately promoted Brcic. *Id*. ¶¶ 16, 26–27.

McCullough alleges MDM consistently praised her performance until she began refusing to carry out unlawful directives. *Id*. ¶ 29. Brcic gave McCullough negative performance reviews after she reported his misconduct. *Id*. ¶ 30. McCullough alleges that she received verbal harassment and obscene and sexualized comments, and at times, she felt compelled to hide from her supervisor at the worksite. *Id*. She also discovered she had been removed from the daily stormwater inspection schedule emails. Dkt. 1 ¶¶ 23–24.

McCullough contends that MDM denied her leave requests but approved similar requests from other inspectors and threatened to reassign her to a distant worksite if she continued reporting violations. *Id*. ¶ 30. McCullough claims these conditions caused severe emotional distress and ultimately led her to resign on April 14, 2024 "[d]ue to concerns for my health and wellbeing." *Id*. ¶¶ 30–31.

McCullough filed this one-count action on February 20, 2025, asserting a *Bowman* claim for wrongful discharge alleging that MDM created intolerable working conditions in retaliation for her refusal to violate various state and federal laws at the company's direction. *Id*. ¶ 34. MDM filed a motion to dismiss, which McCullough opposes. Dkts. 4–5, 10-11.

## II.    LEGAL STANDARD

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, a complaint does not satisfy this standard with only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). The complaint must assert facts that nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III.    ANALYSIS

A *Bowman* claim arises from the Virginia Supreme Court's recognition of a narrow exception to the employment-at-will doctrine, permitting wrongful discharge claims where an at-will employee is terminated in violation of established public policy. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). The Virginia Supreme Court has only identified three scenarios in which a plaintiff may state a viable *Bowman* claim: (1) where the employee was terminated for exercising a statutorily conferred right; (2) where the discharge violated a public policy explicitly stated in a statute, and the employee was clearly a member of the class that the statute was designed to protect; or (3) where the employee was fired for refusing to engage in a criminal act. *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 710 (Va. 2002). McCullough asserts

3

her claim under the third type of *Bowman* action, which requires her to demonstrate that the conduct MDM pressured her to undertake would have subjected her to prosecution under Virginia criminal law. *Dunn v. Millirons*, 176 F. Supp. 3d 591, 600 (W.D. Va. 2016), *aff'd*, 675 F. App'x 314 (4th Cir. 2017)

A. Constructive Discharge as a Basis for a *Bowman* Claim

McCullough bases her *Bowman* claim on an alleged constructive discharge stemming from her refusal to participate in criminal violations of state and federal law. MDM argues that, as a matter of law, a constructive discharge cannot support a *Bowman* claim and thus the complaint should be dismissed in full.

Neither the Fourth Circuit nor the Virginia Supreme Court has expressly recognized that constructive discharge can serve as the basis for a *Bowman* claim, and Virginia courts are divided on the matter. *See Faulkner v. Dillon*, 92 F. Supp. 3d 493, 498–99 (W.D. Va. 2015). In the absence of controlling authority, I must predict how the Supreme Court of Virginia would rule. *See Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). As the Fourth Circuit has explained, "[i]n such circumstances, the state's intermediate appellate court decisions constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (internal quotation marks and citations omitted).

There is a trend of Virginia courts recognizing the viability of constructive discharge claims, both within and outside of the *Bowman* context. *See, e.g., Epperson v. Dep't of Corr.*, 77 Va. Cir. 325, 2008 WL 8201380, at *5 (Va. Cir. Ct. 2008) (recognizing constructive discharge); *Padilla v. Silver Diner*, 63 Va. Cir. 50, 2003 WL 23538122, at *5 (Va. Cir. Ct. 2003) (same); *Molina v. Summer Consultants, Inc.*, No. 152715, 1996 WL 1065653, at *1 (Va.

Cir. Ct. Dec. 9, 1996) (same).; *Peyton v. United S. Aluminum Prods., Inc.*, 49 Va. Cir. 187, 1999 WL 33729436, at *1 (Va. Cir. Ct. 1999) (recognizing constructive discharge in a *Bowman* context); *Gochenour v. Beasley*, 47 Va. Cir. 218, 1998 Lexis 304, *221–22 (Va. Cir. Ct. 1998) (same); *Johnson v. Behsudi*, 52 Va. Cir. 533, 1997 WL 33120363, at *4 (Va. Cir. Ct. 1997) (same); *Lundy v. Cole Vision Corp.*, 39 Va. Cir. 254, 1996 Lexis 149, at *255 (Va. Cir. Ct. 1996) (same); *Dowdy v. Bower*, 37 Va. Cir. 432, 1995 WL 17044489, *3–4 (Va. Cir. Ct. 1995) (same); *Contra Jones v. Prof'l Hospitality Res., Inc.*, 35 Va. Cir. 458, 1995 WL 17047429, at *3 (Va. Cir. Ct. 1995) (rejecting constructive discharge as employment termination under *Bowman*); *Wright v. Donnelly & Co.*, 28 Va. Cir. 185, 1992 WL 884695, at *2 (Va. Cir. Ct. 1992), *rev'd sub nom*. *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98, 439 S.E.2d 328 (1994) (same).[2]

      Courts in this district have followed the trend in the Virginia trial courts and held that a constructive discharge *Bowman* claim may survive a motion to dismiss if the plaintiff properly alleges all necessary elements of both a *Bowman* cause of action and constructive discharge. *See Briggman v. Nexus Servs. Inc.*, No. 5:18-CV-00047, 2018 WL 6517464, at *5 (W.D. Va. Dec. 11, 2018) (stating "[a]t this point in the litigation, the court … finds that the Supreme Court of Virginia is likely to recognize a constructive discharge *Bowman* claim, assuming that all the other elements of a *Bowman* claim are met."); *Faulkner,* 92 F. Supp. 3d at 498 (denying a motion to dismiss a constructive discharge *Bowman* claim); *Deedrich v. Danville Redevelopment & Hous. Auth.*, No. 4:24CV00008, 2025 WL 1265536, at *6 (W.D. Va. Apr. 30, 2025) (same). At

---

[2] Although the circuit court in *Wright* held that Virginia did not recognize a *Bowman* claim for constructive discharge, the Virginia Supreme Court reversed in *Lockhart*, and reinstated the plaintiff's claim. However, the Court did not address the constructive nature of the alleged discharge and instead appeared to characterize the separation as a termination.

this stage, these decisions are persuasive, and I find the mere fact that McCullough's claim relies on an alleged constructive discharge does not justify dismissal.

B. McCullough Fails to Plausibly Allege Directed Violation of Law

McCullough predicates her claim on alleged directives from MDM that required her to violate various state and federal laws.[3] A *Bowman* claim is a distinctly state law cause of action and cannot rest on violations of federal law. *See Wells v. Enter. Leasing Co. of Norfolk/Richmond, LLC*, 500 F. Supp. 3d 478, 488 (E.D. Va. 2020). I therefore turn to the three Virginia statutes McCullough relies upon to support her claim.[4]

To state a plausible *Bowman* claim based on direction to commit a crime, McCullough must do more than enumerate state criminal statutes; she must allege that her employer, MDM, directed her to break these laws in a manner exposing her to potential criminal prosecution. *See Dunn*, 176 F. Supp. 3d at 600. She fails to meet this standard.

The Virginia Erosion and Stormwater Management Act, Va. Code § 62.1-44.15:24 *et seq*. regulates sediment and erosion control and stormwater management for natural gas pipeline construction projects. The Act provides that "[t]he violation of any provision of this article may also result in . . . sanctions," including criminal penalties under § 62.1-44.32. Va. Code § 62.1-44.15:48(C)(2). Here, McCullough does not allege how MDM's direction to create or certify false or inaccurate inspection reports violated this statute, nor that such conduct could subject her to criminal prosecution.

---

[3] Specifically, she cites the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*; the Virginia Erosion and Stormwater Management Act, Va. Code § 62.1-44.15:24 *et seq.*; federal hazardous materials regulations, 49 C.F.R. §§ 171–180; 18 U.S.C. § 1001 (false statements to a federal agency); Va. Code § 18.2-168 (forgery of public records); and Va. Code § 18.2-178 (false pretenses).

[4] Virginia Erosion and Stormwater Management Act, Va. Code § 62.1- 44.15:24, *et seq.*; Forging public records, Va. Code § 18.2-168; and Fraud, Va. Code § 18.2-178.

McCullough's reliance on the Virginia forgery statute, Va. Code § 18.2-168, is similarly misplaced. The plain text of Virginia Code § 18.2-168 forbids the

> forge[ry of] a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged.

The statutory language implies the forged record must be one "of any public officer or public employee." However, Virginia courts have applied the statute broadly to criminalize fabricating or using false records to assert legal rights or obligations before any public official or employee.[5] *See, e.g.*, *Goodwin v. Commonwealth*, 64 Va. App. 322, 330–31, 767 S.E.2d 741, 745–46 (2015). Even under this broader interpretation, McCullough does not make any factual allegations that the inspection reports she was directed to falsify and certify were submitted to a public official or employee as legal proof of anything. Thus, the Complaint does not allege sufficient facts to show that compliance with MDM's directives could have subjected her to prosecution under Va. Code § 18.2-168.

Finally, McCullough also fails to allege that her compliance with MDM's orders would have exposed her to criminal liability under the Virginia false pretenses statute, Va. Code § 18.2-178. A violation of the false pretenses statute requires proof of "(1) an intent to defraud;

---

[5] *See Moreno v. Commonwealth*, 65 Va. App. 121, 126, 775 S.E.2d 422, 424 (2015) (affirming conviction under Va. Code §§ 18.2-168 and 42.1-77, holding that a forged accord and satisfaction letter submitted by the defendant to a court in his victim's name qualified as a "public record" under the Virginia Public Records Act, Va. Code § 42.1-77); *Bennett v. Commonwealth*, 48 Va. App. 354, 357–58, 631 S.E.2d 332, 333–34 (2006) (affirming a Va. Code § 18.2-168 conviction for defendant's use of a false name and identifying information in a commercial driver's license application submitted to the DMV); *Goodwin*, 64 Va. App. at 324 (affirming a conviction under Va. Code § 18.2-168 for defendant's false identification of himself and provision of a false social security number to a police officer at a traffic stop); *Johnson v. Commonwealth*, No. 1241-23-3, 2024 WL 3498752, at *3–4 (Va. Ct. App. July 23, 2024) (affirming defendant's forgery conviction for fraudulently signing the name of a car title holder on the "Assignment of Title by Owner" section of a car title and submitting it to the DMV).

7

(2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud … that is, the false pretenses to some degree induced the owner to part with his property…" *Carter v. Commonwealth*, 280 Va. 100, 110 (2010). The Complaint does not allege that the false documentation MDM directed McCullough to create caused any person or entity any property loss. McCullough fails to plead this essential element, and thus the Complaint does not plausibly allege that any refusal by McCullough to comply with MDM's directions would expose her to criminal prosecution under § 18.2-178.

C. McCullough's Allegations Fail to Establish Constructive Discharge

Plaintiffs face a high bar in establishing a constructive discharge claim. *Ofoche v. Apogee Med. Grp.*, 815 F. App'x 690, 692 (4th Cir. 2020). Constructive discharge only occurs when working conditions become so intolerable that a reasonable person in the employee's position would feel compelled to resign. *Green v. Brennan*, 578 U.S. 547, 555 (2016).

Here, there is no dispute McCullough resigned. The question is whether her working conditions were objectively intolerable. Courts have consistently held that a plaintiff must show conditions so severe that resignation was effectively involuntary. Subjective feelings or reasonable choices to resign are insufficient. *See McCormack v. Blue Ridge Behav. Healthcare*, 523 F. Supp. 3d 841, 851 (W.D. Va. 2021), *aff'd*, No. 21-1447, 2022 WL 16630565 (4th Cir. Nov. 2, 2022). Routine workplace conflicts and adverse personnel actions, even if perceived as unfair, do not meet this standard. For example, being yelled at, publicly criticized, given poor evaluations, or required to work while injured are insufficient to establish constructive discharge. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Similarly, denial of promotions, workload changes, and revoked training privileges have been held not to constitute constructive discharge. See *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019).

McCullough alleges false disciplinary actions, negative reviews, verbal harassment, exclusion from email chains, denial of medical leave, and threats of transfer to undesirable work sites, causing emotional and psychological harm. These allegations are likely inadequate to demonstrate that—following her refusal to carry out an unlawful directive—she was subject to employment conditions so intolerable that she was forced to resign.

## IV.   CONCLUSION

McCullough has not alleged sufficient facts to plausibly support a claim of constructive discharge or termination for refusing to commit a criminal act under *Bowman*. Accordingly, MDM's motion to dismiss is **GRANTED** and the complaint is dismissed without prejudice. However, because it is possible that McCullough may cure the deficiencies identified in this opinion by alleging additional facts, I grant her leave to file an amended complaint within 21 days of the date of this Order. *See* Fed. R. Civ. P. 15(a)(1)(B).

It is so **ORDERED**.

Entered:  December 1, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge