IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 06, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ T. Costa
DEPUTY CLERK

|  |  |
|---|---|
| DAWN ELIZABETH MCCULLOUGH, ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No. 7:25-CV-117 |
| **v.** ) | |
| ) | |
| MDM SOLUTIONS, LLC, ) | **By: Hon. Robert S. Ballou** |
| ) | **United States District Judge** |
| **Defendant.** ) | |
| ) | |

### MEMORANDUM OPINION

Plaintiff Dawn Elizabeth McCullough filed an Amended Complaint against her former employer, MDM Solutions, LLC, alleging a *Bowman* claim, which recognizes a common law cause of action in Virginia for terminating an at-will employee in violation of public policy. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). Here, McCullough asserts that she suffered a hostile workplace and constructive discharge for refusing her employer's direction that she engage in a criminal act. This Court dismissed McCullough's original complaint for failure to state a claim. Dkts. 21–22. McCullough alleges in her Amended Complaint (Dkt. 25) additional directions to violate the law and more specific instances of the intolerable, abusive workplace which led to her constructive discharge. McCullough's claims of an intolerable and abusive work environment are vague and conclusory and fail to plausibly state a claim. Therefore, the Court **GRANTS** the motion to dismiss the Amended Complaint. Dkts. 29–30.

### I.    Background

I set out McCullough's allegations in the Amended Complaint which I accept as true when reviewing a motion to dismiss. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

In June 2020, McCullough began working for MDM as an environmental inspector on the Mountain Valley Pipeline in Roanoke County. Dkt. 26 ¶¶ 2, 6. MVP is a natural gas pipeline that extends from West Virginia through Virginia. *Id*. ¶ 9. MDM provided inspection staff to MVP during construction of the pipeline and therefore held permits that required compliance with various environmental laws and other federal regulations. *Id*. ¶¶ 12, 15. As an Environmental Inspector, McCullough was aware of MDM's duties under federal law. *Id*. ¶ 12. McCullough alleges that MDM directed her to violate multiple state laws by fraudulently certifying that certain MVP work sites under her supervision were compliant with the law and that MDM was performing legally required inspections. *Id*. ¶¶ 15(a)(iii), 21, 23, 25. In fact, McCullough alleges that these work sites were not in compliance with the applicable regulations and she reported these violations as required. *Id*. ¶ 13. MDM does not contest, for the purposes of this motion, that McCullough plausibly alleges that her employer directed her to violate the law. Dkt. 34 at 2. The motion to dismiss focuses on whether McCullough has sufficiently alleged facts to meet and surpass the requirements for stating a constructive discharge claim.

Before McCullough reported MVP's unlawful activities in the workplace, MDM praised her performance. Dkt. 25 ¶ 38. In retaliation for reporting that MVP failed to meet environmental requirements, McCullough alleges that MDM created an intolerable working environment, Dkt. 25 ¶¶ 39(a)–(i), (k), which included subjecting her to disparate treatment, false discipline and performance reviews, verbal and sexual harassment. The situation got so bad at work that she believed that her termination was imminent. *Id*. ¶¶ 39(k)(iv), 40–44, 46.

In early 2024, MDM threatened to transfer McCullough to a worksite far from her residence "if she had a problem with [Brcic – her supervisor]." *Id*. ¶¶ 16, 32(f). She declined the transfer, feeling that her concerns of illegality were brushed aside. *Id*. ¶¶ 16–17. Next, MDM

sought to make McCullough appear insubordinate because she refused to text and drive. *Id*. ¶ 18.
McCullough also alleges that MDM requested that she engage in unsafe and illegal behavior,
stating, "I was told that if my boss tells me to 'pick up bricks' MDM expected me to pick up
these bricks even if they were unsafe or illegal." *Id*. ¶ 18. MDM also denied her requests for
medical leave despite approving similar requests made by other environmental inspectors. *Id*. ¶
39(e).

Throughout 2023 and 2024, McCullough received mental health counseling. *Id*. ¶ 39(j).
She was diagnosed with anxiety disorder due to the "toxic" working environment at MDM. *Id*.
On February 2, 2024, McCullough contacted human resources and described the abusive
conduct. She alleged that Brcic psychologically abused her and that she feared he might
physically harm her. *Id*. ¶ 39(k). McCullough stated, "I am now concerned that John [Brcic] may
try to conspire with the contractor to 'accidentally' cause me bodily harm after not getting the
result I feel he was after in his last attempt to punish me. It is clear to me he is still determined to
make me suffer." *Id*. ¶ 39(k)(i).

McCullough also alleges pervasive sexual harassment throughout her employment. *Id*. ¶
39(d). She claims the harassment worsened in retaliation for her refusal to violate the law. *Id*.
Although she does not allege specific instances of harassment, McCullough avers that her
supervisors and coworkers repeatedly requested that she engage in sexual acts, including
"threesomes and one night stands." *Id*. McCullough also alleges that in January 2024 she
encountered one of the persons who harassed her at the worksite, which caused her to have a
panic attack. *Id*. ¶ 39(i). It is not clear if the harasser was a fellow MDM employee or a
supervisor.

Finally, McCullough alleges that she believed her termination was imminent before her resignation. *Id*. ¶¶ 41, 44. On April 13, 2024, another inspector asked McCullough about being laid off. *Id*. ¶ 40. She did not know MDM planned to terminate her employment. *Id*. The next day, MDM removed McCullough from all work email communications. *Id*. ¶ 42. McCullough arrived at her scheduled job site on April 14, 2024, and management immediately replaced her with a different inspector. *Id*. ¶ 43. Later that day, McCullough resigned because the working conditions had become intolerable, and she believed that termination was imminent.[1] *Id*. ¶ 46–47.

McCullough filed the Amended Complaint on December 19, 2025, asserting a *Bowman* claim for wrongful discharge alleging that MDM created an intolerable working environment because she refused to criminally falsify the reports regarding MVP's environmental worksite compliance. *Id*. ¶¶ 50, 53, 54. MDM does not dispute in its motion to dismiss that constructive discharge can be the basis for a *Bowman* claim or that McCullough has plausibly stated facts that falsifying work site environmental reports is a crime. MDM contends that McCullough fails to allege that MDM created an abusive workplace and intolerable work conditions sufficient to plausibly allege constructive discharge. Dkt. 30 at 1.

## II.    Legal Standard

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, a complaint does not satisfy this standard with only "labels and conclusions"

---

[1] MDM represents that McCullough sent her resignation letter to MDM on April 12, 2024. Dkt. 30 at 3. The date the email was sent is not contained in the complaint.

or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). The complaint must assert facts that nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III.    Discussion

A *Bowman* claim arises from the Virginia Supreme Court's recognition of a narrow exception to the employment-at-will doctrine, permitting wrongful discharge claims where an at-will employee is terminated in violation of established public policy. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). The Supreme Court of Virginia consistently characterizes the *Bowman* exception as "narrow" observing that "termination of an employee in violation of the policy underlying any one [statute] does not automatically give rise to a common law cause of action for wrongful discharge." *City of Va. Beach v. Harris*, 523 S.E.2d 239, 245 (Va. 2000); *see also Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 918 (Va. 1987) ("The exception we recognized was not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests."). The Virginia Supreme Court has only identified three scenarios in which a plaintiff may state a viable *Bowman* claim: (1) termination for exercising a statutorily conferred right; (2) discharge in violation of a public policy explicitly stated in a statute designed to protect the class of persons of which the plaintiff was clearly a member; or (3) termination for refusing to engage in a criminal act. *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002). McCullough's claim arises under the third category alleging constructive discharge for refusing to falsify environmental reports. Proof of this claim requires that McCullough demonstrate that the conduct MDM pressured her to undertake would have subjected her to prosecution under Virginia criminal law. *Dunn v. Millirons*, 176 F. Supp. 3d 591, 600 (W.D. Va. 2016), *aff'd*, 675 F. App'x 314 (4th Cir. 2017).

This Court previously held that a constructive discharge could support a Bowman claim, Dkts. 21–22, and for the purposes of this motion, MDM does not dispute that McCullough plausibly alleges that her supervisor(s) directed that she commit a crime by falsifying environmental reports. MDM argues that McCullough's claims fail to meet the high bar required to show constructive discharge. Dkt. 30 at 1.

McCullough alleges that she "suffered constructive discharge" in retaliation for refusal to commit criminal acts as directed by MDM. Dkt. 1 ¶ 51, 53–54. The Virginia Supreme Court has not adopted a test to determine when intolerable or abusive workplace conditions can lead to a constructive discharge. Absent controlling authority, I must predict how the Supreme Court of Virginia would rule. *See Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). As the Fourth Circuit has explained, "[i]n such circumstances, the state's intermediate appellate court decisions constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (internal quotation marks and citations omitted). Therefore, I rely on Virginia Circuit Court[2] cases to provide the standard for constructive discharge. *See Faulkner v. Dillon*, 92 F. Supp. 3d. 493, 499 (W.D. Va. 2015) ("[S]tate trial court decisions are particularly useful 'if there is a line of decisions reaching the same result.'" (quoting 8 John Bourdeau et al., *Federal Procedure, Lawyers Edition* § 20:635)).

Several Virginia Circuit Courts have adopted the Fourth Circuit's test for constructive discharge described in *Bristow v. Daily Press, Inc.*, 770 F.2d 1251 (4th Cir. 1985). *Epperson v. Dep't of Corr.*, 77 Va. Cir. 325, *5 (Va. Cir. Ct. 2008); *Molina v. Summer Consultants, Inc.*, No.

---

[2] Prior to January 1, 2022, the Court of Appeals of Virginia did not have appellate jurisdiction over employment claims.

152715., 1996 WL 1065653, *1 (Va. Cir. Ct. 1996); *Dowdy v. Bower*, 37 Va. Cir. 432, *3 (Va. Cir. Ct. 1995). Per *Bristow*, constructive discharge requires evidence that an employer acted deliberately to make an employee's working conditions intolerable and thereby forces the employee to resign. 770 F.2d at 1255.

### A. Intolerability

MDM argues that McCullough has not plausibly stated that her work environment was intolerable which is "the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Epperson*, 77 Va. Cir. at *5 (citing *Bristow*, 770 F.2d at 1255). Plaintiffs face a high bar to establish intolerability. Virginia courts require that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Johnson v. Behsudi*, 52 Va. Cir. 533, *4 (Va. Cir. Ct. 1997) (quoting *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)); *see also Padilla v. Silver Diner*, 63 Va. Cir. 50, *5 (Va. Cir. Ct. 2003) ("To establish constructive discharge, a plaintiff must show that the termination was in violation of 'clear and unequivocal public policy of this Commonwealth, that no person should have to suffer such indignities.'"). The cause of action is not available for "situations where only bad manners and mere hurt feelings are involved." *Johnson*, 52 Va. Cir. at *4 (quoting *Womack v. Eldrige*, 210 S.E.2d 145, 148 (Va. 1974)). Further, the plaintiff must show a causal connection between the Bowman violation and the intolerable workplace. In short, McCullough must allege that the individuals creating an intolerable workplace were retaliating for her refusal to violate the law. McCullough's allegations of intolerability generally fall into three groups: (1) disparate treatment (2) sexual harassment and (3) expectation of imminent termination.

#### 1. Disparate Treatment

McCullough's claims of false disciplinary actions, negative performance reviews, exclusion from key email communications, verbal harassment, denial of medical leave, and threats of transfer to undesirable assignments are clearly insufficient to show intolerability. In *Epperson*, the court found that demotions, disciplinary charges, and transfer to a different assignment were merely "frustrating and disappointing condition[s] of employment" but did not show an intolerable work environment. 77 Va. Cir. at *5–6. McCullough's allegations of general workplace grievances do not meet the standard of outrageousness to show intolerability.

### 2. Sexual Harassment

McCullough also claims she endured numerous requests to engage in sexual acts, exposure to a frequent sexual harasser, and fear of bodily harm, which allegedly caused significant emotional distress. Dkt. 25 ¶ 39(d), (i), (k). Sexual harassment can create an intolerable environment. In *Johnson*, the Virginia circuit court found that the plaintiff suffered an intolerable work environment because she endured continuous sexual comments and conduct, and the defendant drugged her, placed her in a van, and engaged in offensive and sexual touching without her consent. 52 Va. Cir. at *1. In *Faulkner*, this Court found an intolerable work environment when the plaintiff's supervisor "began to repeatedly solicit [her] for sexual favors and a sexual relationship in exchange for favorable treatment," touched her inappropriately, and offered to exchange money for sexual acts. 92 F. Supp. at 496; *see also Molina*, 1996 WL 1065653, at *1 (finding intolerability and deliberateness because the plaintiff was subject to pervasive sexual harassment); *Dowdy*, 37 Va. Cir. at *3 (same).

But to state a claim, a complaint "must offer more than labels and conclusions." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Virginia courts that have recognized constructive discharge have made clear that this cause of action "should not be allowed to

8

circumvent Virginia's strong adherence to the employment at-will doctrine." *Johnson*, 52 Va. Cir. at *4. Only the most outrageous, depraved conduct will create an intolerable workplace. *Id*.; *see also Epperson*, 77 Va. Cir. at *5 (requiring "severe and pervasive" conditions to demonstrate an intolerable work environment). Given this stringent standard, McCullough's vague allegations of inappropriate sexual requests and conversations are insufficient to show intolerability. Further, McCullough's vague allegations make it impossible to demonstrate causation. Based on the Amended Complaint, it is not clear that the individuals who engaged in sexual harassment were aware of and retaliating against McCullough because of her refusal to violate the law.

   *3. Imminent Termination*

  Finally, McCullough alleges that the work environment became intolerable because "MDM took steps that would let any reasonable person believe that a termination was imminent" Dkt. 25 ¶ 46. On April 13, an inspector asked McCullough about being laid off. *Id*. ¶ 30. MDM argues that "being given a future end date for one's employment does not constitute 'intolerable' working conditions." Dkt. 30 at 9. The Virginia Courts have not addressed this issue. MDM relies upon two federal cases holding that failure to renew the plaintiff-employee's contract did not constitute intolerability. *See Rodriguez v. Elon Univ.,* No. 1:17CV165, 2018 WL 1997987 (M.D.N.C. Apr. 27, 2018), *aff'd per curiam*, 751 F. App'x. 395 (4th Cir. 2018); *Burke v. CHS Middle E., LLC*, No. 1:18-CV-01605, 2019 WL 459022 (E.D. Va. Feb. 4, 2019). In *Rodriguez*, the employer denied the employee tenure and offered him a one-year contract following the expiration of his contract. 2018 WL 1997987 at *8. In *Burke*, the court held that "[s]tanding alone, an employer's decision not to rehire an employee for another year does not make the employee's working conditions objectively intolerable." 2019 WL 459022 at *6. Because these authorities do not address at-will employees, they are not persuasive. Courts in the Fourth Circuit

have held that "constructive discharge also may occur where 'an employer acts in a manner so as to have communicated to a reasonable employee that she *will* be terminated.'" *Appleton v. Orange Cnty. Sch. Bd.*, No. 3:25-CV-00001, 2025 WL 2677901, at *4 (W.D. Va. Sept. 18, 2025) (emphasis in original) (internal citations omitted); *Decoster v. Becerra*, No. CV TDC-21-2195, 2022 WL 3083343 (D. Md. Aug. 3, 2022), at *4, *aff'd*, 119 F.4th 332 (4th Cir. 2024) (citing *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002) (same)). The threat of termination must be unequivocal and imminent. *See Bauer v. Holder*, 25 F. Supp. 3d 842, 852 (E.D. Va. 2014), *vacated on other grounds, Bauer v. Lynch*, 812 F.3d 340 (4th Cir. 2016).

As a threshold matter, I must determine whether the "imminent termination" application of constructive discharge is likely to apply under Virginia law because the Virginia courts have not addressed the issue. Because Virginia adheres strongly to the doctrine of at-will employment, and has not explicitly adopted any form of constructive discharge, I find that the Virginia courts are unlikely to adopt the imminent termination application. The Virginia Circuit Courts which have found constructive discharge uniformly have required that the employee suffer extreme indignities. *Padilla*, 63 Va. Cir. at *5. An employee's belief that termination is imminent does not appear to rise to the level of abuse required.

Even assuming an employee can rely upon imminent termination to show an intolerable workplace under Virginia law, McCullough likely does not demonstrate that MDM unequivocally threatened her with imminent termination. In an email on February 2, 2024, she alleges that "MDM wanted to get rid of her" but provides no basis for that assertion. Dkt. 25 ¶ 39(k)(iv). Although suggesting imminent termination, a coworker commenting on "the layoff" and removal from work communications is likely not, in of itself, sufficient to show intolerability as described in *Appleton*. *Cf. Deedrich v. Danville Redeveuopment & Hous. Auth.*, No.

10

4:24CV00008, 2025 WL 1265536, at *4 (W.D. Va. Apr. 30, 2025) (holding that intolerability was met when the plaintiff "was pressured to sign a performance improvement plan and received information that Board members were planning to fire her when an email was accidentally forwarded to her stating that her recent action was 'the last straw.'"). The Amended Complaint does not specify when McCullough sent her resignation letter. If, as MDM alleges, the letter was sent on April 12, 2024, McCullough's interactions with her coworkers after she informed MDM of her resignation do not plausibly show that MDM made her believe termination was imminent. Dkt. 30 at 3.

At the hearing on April 6, 2026, McCullough argued that aggregation of her complaints, coupled with directed violation of law, are sufficient to show intolerability. Intolerability is assessed considering the totality of the circumstances. *Deedrich*, 2025 WL 1265536 at *4 (considering a series of particularized actions collectively to find intolerability). But, in this case, aggregation does not cure deficiencies in the Amended Complaint. Unlike in *Deedrich*, the Amended Complaint fails to show a causal connection between directed violation of law and intolerability. McCullough alleges a threatened transfer, removal from email communications, and unfair reprimand for refusing to text and drive. Dkt. 25 ¶¶ 18, 27, 39(f). These allegations are insufficient to show intolerability. Certainly, sexual harassment can alone create an intolerable work environment, but McCullough's claims of sexual harassment cannot be considered even in the aggregate because they are vague and conclusory. Further, because McCullough alleges that she was subject to sexually harassing behavior throughout her employment, and fails to provide specific instances of harassment at any point, these claims lack the requisite causal connection between her refusal to violate the law and a change in the nature and or frequency of the harassment she faced. Similarly, McCullough's claims that she feared

11

imminent termination are unavailing, because they do not reach the high standard of certainty about termination contemplated in *Deedrich* and *Appleton*. Even considering McCullough's claims in the aggregate, the Amended Complaint fails to plausibly allege intolerability.

B.   Deliberateness

MDM also argues that McCullough fails to show that MDM intended to force her to resign due to her protected activity. Dkt. 30 at 9. As a threshold matter, I must determine whether deliberateness of the employer's action is still a required element of a constructive discharge claim. Again, because there is no controlling precedent in the state court, I must predict how the Supreme Court of Virginia would rule. *See Liberty Mut. Ins. Co.*, 957 F.2d at 1156. For cases arising under federal law, the "deliberateness" requirement in *Bristow* has been abrogated. *See Green v. Brennan*, 578 U.S. 547, 560 (2016) ("We do not also require an employee to come forward with proof—proof that would often be difficult to allege plausibly—that not only was the discrimination so bad he had to quit, but also that his quitting was the employer's plan all along."); *see also U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017)("'[D]eliberateness' is no longer a component of a constructive discharge claim.").

The Virginia courts have not addressed constructive discharge post-*Green*. Two Western District of Virginia cases, applying Virginia law, retained the deliberateness requirement as articulated in *Bristow*. *See Briggman v. Nexus Servs. Inc.*, No. 5:18-CV-00047, 2018 WL 6517464, at *5 (W.D. Va. Dec. 11, 2018); *Deedrich*, 2025 WL 1265536, at *6. Because federal courts are directed to look to state, not federal, precedent to determine how the Supreme Court of Virginia will rule, I agree that the *Bristow* standard adopted by Virginia Circuit Courts, although

12

abrogated for federal claims, is controlling. Therefore, McCullough must plausibly allege deliberateness to state a valid claim for constructive discharge.

"Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit.'" *Epperson*, 77 Va. Cir. at *6 (quoting *Bristow*, 770 F.2d at 1255 (internal citations omitted). If all employees are treated identically, a particular employee cannot claim that intolerable conditions show that the employer intended the employee to resign. *Id*. That said, "[i]ntent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." *Id*. Pervasive alleged abuse can support the inference of deliberateness. *Padilla*, 63 Va. Cir. at *5.

McCullough alleges that she raised concerns of an intolerable working environment to MDM management repeatedly. Dkt. 15 ¶¶ 39(h), 39(k). At this stage of proceedings, allegations of MDM's failure to act would be sufficient to demonstrate deliberateness if the work environment were intolerable. Because McCullough fails to plausibly allege intolerability, the deliberateness prong is also insufficient.

## IV.    Conclusion

For purposes of this motion to dismiss, McCullough has alleged sufficient facts that she refused her employer's demands that she engage in illegal conduct. She has alleged in general terms only that she suffered number indignities at work, including sexual harassment, fear for her safety at the worksite, and other acts which she perceived as retaliatory. Although McCullough clearly demonstrates that her workplace was unpleasant, the allegations about the conditions McCullough faced at the worksite lack the specificity and the causal connection required to support a constructive discharge claim because of a *Bowman* violation by MDM. Accordingly, MDM's motion to dismiss is **GRANTED** and the amended complaint is dismissed without

prejudice. However, because it could be that McCullough may cure the deficiencies identified in this opinion by alleging additional facts, I grant her leave to file an amended complaint within 21 days of the date of this Order. *See* Fed. R. Civ. P. 15(a)(2).

An appropriate Order will follow.

Entered:  May 6, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

14