**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 04, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ E. Jones
DEPUTY CLERK

| | | |
|---|---|---|
| **DAWN ELIZABETH MCCULLOUGH,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:25-CV-00117** |
| **v.** | ) | |
| **MDM SOLUTIONS, LLC,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Dawn Elizabeth McCullough filed an Amended Complaint against her former employer, MDM Solutions, LLC, alleging a *Bowman* claim, which recognizes a common law cause of action in Virginia for terminating an at-will employee in violation of public policy. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). Here, McCullough asserts that she suffered a hostile workplace and constructive discharge for refusing her employer's direction that she engage in a criminal act. This Court dismissed McCullough's original complaint and first amended complaint for failure to state a claim. Dkts. 21–22, 39–40. McCullough alleges in her Second Amended Complaint (Dkt. 41) more specific communications regarding the intolerable workplace and instances of sexual harassment. Many of McCullough's allegations detail uncomfortable working conditions but fail to causally connect those conditions to her protected activity because the allegedly retaliatory acts and harassment occurred before the protected activity or are stated only in vague and conclusory terms. The remaining allegations of intolerability that are plausibly connected to the protected activity are insufficient to show intolerability under Virginia law. Therefore, the Court **GRANTS** MDM's motion to dismiss the Second Amended Complaint with prejudice.

## I. Background

I set out McCullough's allegations in the Second Amended Complaint which I accept as true when reviewing a motion to dismiss. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

In June 2020, McCullough began working for MDM as an environmental inspector on the Mountain Valley Pipeline in Roanoke County. Dkt. 41 ¶¶ 2, 6. MVP is a natural gas pipeline that extends from West Virginia through Virginia. *Id*. ¶ 9. MDM provided inspection staff to MVP during construction of the pipeline and therefore held permits that required compliance with various environmental laws and other federal regulations. *Id*. ¶¶ 9, 11. As an Environmental Inspector, McCullough was aware of MDM's duties under federal law. *Id*. ¶ 12. McCullough alleges that MDM directed her to violate multiple state laws by fraudulently certifying that certain MVP work sites under her supervision were compliant with the law and that MDM was performing legally required inspections. *Id*. ¶¶ 15(a)(iii), 21, 23, 25, 26. In fact, McCullough alleges that these work sites were not in compliance with the applicable regulations and she reported these violations as required. *Id*. ¶ 13. MDM does not contest, for the purposes of this motion, that McCullough plausibly alleges that her employer directed her to violate the law. Dkt. 43 at 1. The motion to dismiss focuses on whether McCullough has sufficiently alleged facts to meet the requirements for stating a constructive discharge claim and to show a causal connection between McCullough's protected activity and the alleged harassment.

Before McCullough reported MVP's unlawful activities in the workplace, MDM praised her performance. Dkt. 41 ¶ 39. In retaliation for reporting that MVP failed to meet environmental requirements, McCullough alleges that MDM created an intolerable working environment, *id.* ¶¶ 40(a)–(x), which included subjecting her to disparate treatment, false discipline and performance

reviews, verbal and sexual harassment. McCullough also alleges that, sometime in the spring of 2024, she believed that her termination was imminent. *Id*. ¶¶ 41–48.

In early 2024, MDM threatened to transfer McCullough to a worksite far from her residence "if she had a problem with [Brcic – her supervisor]." *Id*. ¶ 16. She declined the transfer, feeling that her concerns of illegality were brushed aside. *Id*. ¶¶ 16–17. Next, MDM sought to make McCullough appear insubordinate because she refused to text and drive. *Id*. ¶ 18. McCullough also alleges that MDM requested that she engage in unsafe and illegal behavior, stating, "I was told that if my boss tells me to 'pick up bricks' MDM expected me to pick up these bricks even if they were unsafe or illegal." *Id*. MDM also denied her requests for medical leave despite approving similar requests made by other environmental inspectors. *Id*. ¶ 40(q).

Throughout 2023 and 2024, McCullough received mental health counseling. *Id*. ¶ 40(w). She was diagnosed with anxiety disorder due to the "toxic" working environment at MDM. *Id*. On February 2, 2024, McCullough contacted human resources and described the abusive conduct. She alleged that Brcic psychologically abused her and that she feared he might physically harm her. *Id*. ¶ 40(x). McCullough stated, "I am now concerned that John [Brcic] may try to conspire with the contractor to 'accidentally' cause me bodily harm after not getting the result I feel he was after in his last attempt to punish me. It is clear to me he is still determined to make me suffer." *Id*. ¶ 40(x)(i).

McCullough also alleges pervasive sexual harassment throughout her employment. *Id*. ¶ 40(d). She claims the harassment worsened in retaliation for her refusal to violate the law. *Id*. But McCullough also alleges that the sexual harassment began in 2020 and occurred "[n]early each month of every year she worked at MDM." *Id*. ¶ 40(e). The specific sexual harassment included repeated requests to engage in sexual acts, including "threesomes and one night stands."

*Id*. ¶ 40(d). In 2021, a MDM supervisor sexually harassed McCullough, following her onto private property to discuss sexual acts. *Id*. ¶ 40(e). McCullough no longer worked for that supervisor after 2021, but the sexual harassment from coworkers and contractors continued. *Id*. ¶ 40(f). In January 2024, McCullough contacted Human Resources and Supervisor Ben Roberson, alleging a "negative work environment" and constant sexual harassment in the "male dominated field." *Id*. ¶¶ 40(g)–(h). In February 2024, McCullough again contacted Human Resources, stating that Human Resources failed to follow up on her complaints of sexual harassment. *Id*. ¶¶ 40(k)–(l). McCullough also alleges that in January 2024 she encountered one of the persons who harassed her at a worksite, which caused her to have a panic attack. *Id*. ¶ 40(u). McCullough's harasser was a fellow employee who had sexually propositioned her and discussed engaging in sexual acts in 2023. *Id*. ¶ 40(v). McCullough alleges that MDM did not punish the employee for his behavior or take reasonable steps to separate her from him. *Id*.

Finally, McCullough alleges that she believed her termination was imminent before her resignation. *Id*. ¶¶ 43. On February 2, 2024, McCullough emailed MDM Human Resources, alleging that she believed MDM intended to terminate her employment. *Id*. ¶ 40(x). On April 12, 2024, McCullough resigned. On April 13, 2024, another inspector asked McCullough about being laid off. *Id*. ¶ 40. McCullough contacted her foreman later that day, and he informed her that she was being laid off. *Id*. ¶ 42. The next day, MDM removed McCullough from all work email communications. *Id*. ¶ 44. McCullough arrived at her scheduled job site on April 14, 2024, and management immediately replaced her with a different inspector. *Id*. ¶ 45. McCullough alleges that she resigned because the working conditions had become intolerable, and she believed that termination was imminent. *Id*. ¶ 48–49.

McCullough filed the Second Amended Complaint on May 27, 2026, asserting a *Bowman* claim for wrongful discharge alleging that MDM created an intolerable working environment because she refused to criminally falsify the reports regarding MVP's environmental worksite compliance. *Id*. ¶¶ 52, 53, 55. MDM again moves to dismiss McCullough's allegations for failure to state a claim. Dkts. 42–43.

## II. Legal Standard

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, a complaint does not satisfy this standard with only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). The complaint must assert facts that nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III. Discussion

A *Bowman* claim arises from the Virginia Supreme Court's recognition of a narrow exception to the employment-at-will doctrine, permitting wrongful discharge claims where an at-will employee is terminated in violation of established public policy. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). The Supreme Court of Virginia consistently characterizes the *Bowman* exception as "narrow" observing that "termination of an employee in violation of the policy underlying any one [statute] does not automatically give rise to a common law cause of action for wrongful discharge." *City of Va. Beach v. Harris*, 523 S.E.2d 239, 245 (Va. 2000); *see also Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 918 (Va. 1987) ("The exception we recognized was not so broad as to make actionable those discharges of at-will employees which violate only

private rights or interests."). The Virginia Supreme Court has only identified three scenarios in which a plaintiff may state a viable *Bowman* claim: (1) termination for exercising a statutorily conferred right; (2) discharge in violation of a public policy explicitly stated in a statute designed to protect the class of persons of which the plaintiff was clearly a member; or (3) termination for refusing to engage in a criminal act. *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002). McCullough's claim arises under the third category alleging constructive discharge for refusing to falsify environmental reports. Proof of this claim requires that McCullough demonstrate that the conduct MDM pressured her to undertake would have subjected her to prosecution under Virginia criminal law. *Dunn v. Millirons*, 176 F. Supp. 3d 591, 600 (W.D. Va. 2016), *aff'd*, 675 F. App'x 314 (4th Cir. 2017).

This Court previously held that a constructive discharge could support a Bowman claim. Dkts. 21–22, 39–40. For the purposes of this motion, MDM does not dispute that McCullough plausibly alleges the first aspect of this kind of *Bowman* claim—that her supervisor(s) directed her to commit a crime by falsifying environmental reports. MDM contends that McCullough again fails to plausibly allege constructive discharge and that her allegations of harassment are not causally linked to her reporting activity as required under *Bowman*. Dkt. 43 at 1.

McCullough alleges that she suffered constructive discharge in retaliation for refusal to commit criminal acts as directed by MDM. Dkt. 41 ¶¶ 55–56. This Court previously held that, in reliance on Virginia Circuit Court cases given the absence of Virginia Supreme Court authority, the appropriate standard for constructive discharge requires that an employer acted deliberately to make an employee's working conditions intolerable and thereby forces the employee to resign. *See* Dkt. 39 at 6; *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985); *Epperson v. Dep't of Corr.*, 77 Va. Cir. 325, at *5 (Va. Cir. Ct. 2008); *Molina v. Summer Consultants, Inc.*,

No. 152715., 1996 WL 1065653, at *1 (Va. Cir. Ct. 1996); *Dowdy v. Bower*, 37 Va. Cir. 432, at *3 (Va. Cir. Ct. 1995).

A. Intolerability

MDM argues that McCullough has not plausibly stated that her work environment was intolerable which is "the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Epperson*, 77 Va. Cir. at *5 (citing *Bristow*, 770 F.2d at 1255). Plaintiffs face a high bar to establish intolerability. Virginia courts require that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Johnson v. Behsudi*, 52 Va. Cir. 533, at *4 (Va. Cir. Ct. 1997) (quoting *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)); *see also Padilla v. Silver Diner*, 63 Va. Cir. 50, at *5 (Va. Cir. Ct. 2003) ("To establish constructive discharge, a plaintiff must show that the termination was in violation of 'clear and unequivocal public policy of this Commonwealth, that no person should have to suffer such indignities.'" (citation omitted)). The cause of action is not available for "situations where only bad manners and mere hurt feelings are involved." *Johnson*, 52 Va. Cir. at *4 (quoting *Womack v. Eldrige*, 210 S.E.2d 145, 148 (Va. 1974)). Further, the plaintiff must show a causal connection between the *Bowman* violation and the intolerable workplace. In short, McCullough must allege that the individuals creating an intolerable workplace were retaliating for her refusal to violate the law. McCullough's allegations of intolerability generally fall into three groups: (1) disparate treatment (2) sexual harassment and (3) expectation of imminent termination. McCullough's Second Amended Complaint primarily supplements the second category, but I address each category in turn.

*1. Disparate Treatment*

McCullough's Second Amended Complaint supplements her allegations of false disciplinary actions, negative performance reviews, exclusion from key email communications, verbal harassment, denial of medical leave, and threats of transfer to undesirable assignments in response to her reporting activity. Specifically, she includes excerpts from emails to substantiate these allegations. *See* Dkt. 41 ¶¶ 40(g), (i)–(j), (n)–(p). However, these allegations are still clearly insufficient to show intolerability. In *Epperson*, the court found that demotions, disciplinary charges, and transfer to a different assignment were merely "frustrating and disappointing condition[s] of employment" but did not show an intolerable work environment. 77 Va. Cir. at *5–6. McCullough's allegations of general workplace grievances and a negative work environment do not meet the standard of outrageousness necessary to show intolerability.

*2. Sexual Harassment*

McCullough claims she endured numerous requests to engage in sexual acts, exposure to a frequent sexual harasser, dismissal of her allegations of abuse, and fear of bodily harm, which allegedly caused significant emotional distress. Dkt. 41 ¶ 40(d), (e), (l)–(m), (v). Sexual harassment can create an intolerable environment. In *Johnson*, the Virginia circuit court found that the plaintiff suffered an intolerable work environment because she endured continuous sexual comments and conduct, and the defendant drugged her, placed her in a van, and engaged in offensive and sexual touching without her consent. 52 Va. Cir. at *1. In *Faulkner v. Dillon*, this Court found an intolerable work environment when the plaintiff's supervisor "began to repeatedly solicit [her] for sexual favors and a sexual relationship in exchange for favorable treatment," touched her inappropriately on multiple occasions, and offered to exchange money for sexual acts. 92 F. Supp. 3d 493, 496 (W.D. Va. 2015); *see also Molina*, 1996 WL 1065653,

at *1 (finding intolerability and deliberateness because the plaintiff was subject to pervasive sexual harassment); *Dowdy*, 37 Va. Cir. at *3 (same).

While McCullough correctly asserts that a plaintiff need not establish intolerability at the motion to dismiss stage, she must plausibly allege intolerability by pleading (1) conditions severe enough to qualify as intolerable under Virginia law and (2) a causal connection between the intolerable conditions and her protected activity. The Virginia courts that have recognized constructive discharge have made clear that this cause of action "should not be allowed to circumvent Virginia's strong adherence to the employment at-will doctrine." *Johnson*, 52 Va. Cir. at *4. Only the most outrageous, depraved conduct will create an intolerable workplace. *Id.*; *see also Epperson*, 77 Va. Cir. at *5 (requiring "severe and pervasive" conditions to demonstrate an intolerable work environment).

McCullough's Second Amended Complaint provides more detailed allegations of sexual harassment. Assessed in a vacuum, McCullough's allegations of sexual harassment beginning in 2020 may be sufficient to show pervasive sexual harassment that created an intolerable workplace. *See Dowdy*, 37 Va. Cir. at *3. But even assuming these claims establish intolerability in general, McCullough's supplemented allegations undermine her argument as to causation.

First, McCullough alleges that she experienced sexual harassment throughout her employment with MDM. Although McCullough alleges that the sexual harassment increased after her reporting activity, she provides no basis to support that allegation. Rather, the complaint alleges that sexual harassment began in 2020 and occurred "[n]early each month of every year that she worked at MDM." Dkt. 41 ¶ 40(e). The conclusory allegation that the harassment increased after her reporting is not supported by McCullough's recitation of the facts. Further, the absence of an allegation of causation is stark next to McCullough's allegations that she was

subject to disparate treatment because of her reporting activity. For example, McCullough alleges that her work performance was rated unfairly "to find a reason to punish or terminate [her] by John Brcic and maybe others." *Id*. ¶ 40(i). By contrast, McCullough never alleges that Brcic or any others who allegedly retaliated against her for her reporting activity engaged in or directed the sexual harassment.

Second, McCullough alleges two specific instances of sexual harassment by fellow employees. She alleges that "[a]n MDM supervisor sexually harassed, propositioned, and stalked [her] in 2021." *Id*. But McCullough's reporting activity did not begin until late 2023. *Id*. ¶ 23. Therefore, any sexual harassment that occurred in 2021 cannot possibly be causally linked to her protected activity. McCullough also alleges that another MDM employee sexually propositioned her and "spoke openly to others about engaging with sexual acts with [her] in 2023." *Id*. ¶ 40(v). But, once again, McCullough does not allege that this harassment occurred after her reporting activity. Absent such allegations, McCullough fails to plead a sufficient causal link between the pervasive sexual harassment and her protected activity.

Third, insofar as any specifically alleged sexual harassment occurred after McCullough's reporting activity, she fails to show that any harassers or supervisors who assigned her to work with a harasser were aware of her reporting activity. McCullough alleges that, in 2024, she was forced to work with the coworker who sexually propositioned her in 2023. *Id*. ¶ 40(v). McCullough does not allege that the harasser or any supervisor who placed them together at the 2024 worksite was aware of McCullough's reporting activities. Absent that knowledge, McCullough fails to allege that the intolerable work environment was causally connected to her reporting activity.

Finally, at the August 18, 2026, hearing, McCullough argued that MDM superiors aware of her reporting activities created an intolerable workplace by failing to respond to her complaints of sexual harassment. This argument is similarly unavailing. On its own, failure to address unwanted sexual comments is different in degree than employer inaction previously found to be intolerable under Virginia law. *See, e.g.*, *Padilla*, 63 Va. Cir. at *1 (finding intolerability when employer failed to respond to reports of repeated sexual and physical abuse, assault and battery, intentional infliction of emotional distress, and false imprisonment). More importantly, McCullough's allegations still fail to adequately plead causation. The Second Amended Complaint suggests that the alleged sexual harassment McCullough experienced and MDM's failure to address it is a company-wide, if not industry-wide, issue unrelated to her protected activity. *See id.* ¶ 40(h) (email to Human Resources and Supervisor Ben Roberson describing sexual harassment as "constantly occurring in this male dominated field"); ¶ 40(l) (alleging that MDM refused to discuss McCullough's allegations of sexual harassment); ¶ 40(j) (email from McCullough to Human Resources stating, "I told you that sexual harassment was prolific in this line of work"). There is no doubt that McCullough has described an incredibly uncomfortable working environment. Even so, a *Bowman* claim requires that the termination or constructive discharge be causally connected to the plaintiff's protected activity. McCullough alleges monthly sexual harassment throughout her time at MDM. Even as supplemented, most of McCullough's allegations of sexual harassment are conclusory. *See, e.g.*, *id.* ¶ 40(f) ("Coworkers and contractors continued to sexually proposition Plaintiff each month [after 2021] continuing to the end of her employment."). Of the alleged specific incidents of sexual harassment, at least one, if not both, occurred before she engaged in protected reporting activity. Therefore, she cannot plausibly allege that she was constructively discharged because of her reporting activity.

*3. Imminent Termination*

Finally, McCullough alleges that the work environment became intolerable because "MDM took steps that would let any reasonable person believe that a termination was imminent" *Id*. ¶ 48. On April 13, 2024, an inspector asked McCullough about being laid off. *Id*. ¶ 41. In her Second Amended Complaint, McCullough supplements these allegations by stating that she contacted her foreman that same day and he informed her that she was being laid off. *Id*. ¶ 42. Courts in the Fourth Circuit have held that "constructive discharge may also occur where 'an employer acts in a manner so as to have communicated to a reasonable employee that she *will* be terminated.'" *Appleton v. Orange Cnty. Sch. Bd.*, No. 3:25-CV-00001, 2025 WL 2677901, at *4 (W.D. Va. Sept. 18, 2025) (emphasis in original) (internal citations omitted); *Decoster v. Becerra*, No. CV TDC-21-2195, 2022 WL 3083343, at *4 (D. Md. Aug. 3, 2022), *aff'd*, 119 F.4th 332 (4th Cir. 2024) (citing *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002) (same)). The threat of termination must be unequivocal and imminent. *See Bauer v. Holder*, 25 F. Supp. 3d 842, 852 (E.D. Va. 2014), *vacated on other grounds*, *Bauer v. Lynch*, 812 F.3d 340 (4th Cir. 2016).

This Court previously held that, as Virginia adheres strongly to the doctrine of at-will employment and has not explicitly adopted any form of constructive discharge, it is unlikely that the Virginia courts would find that threat of imminent termination is sufficient to show constructive discharge. Dkt. 39 at 10. The Virginia Circuit Courts which have found constructive discharge have uniformly required that the employee suffer extreme indignities. *Padilla*, 63 Va. Cir. at *5. An employee's belief that termination is imminent does not appear to rise to the level of abuse required.

Even assuming an employee can rely upon imminent termination to show an intolerable workplace under Virginia law, McCullough fails to allege that MDM's conduct made her believe termination was imminent. McCullough states two allegations to show that she resigned because termination was imminent. First, in an email on February 2, 2024, she told Human Resources that "MDM wanted to get rid of [her]." Dkt. 41 ¶ 40(x)(iii). Although the Second Amended Complaint quotes McCullough's email, she does not explain the basis for her belief.

Second, McCullough alleges that on Saturday, April 13, 2024, another inspector asked her "how she was doing 'with the layoff.'" *Id*. ¶ 41. Later that day, McCullough contacted her foreman, who told her that she was being laid off. *Id*. ¶ 42. The Second Amended Complaint states that "[t]his dialogue provided a good faith belief for Ms. McCulough [sic] on April 13, 2024, that MDM was planning on terminating her employment." *Id*. ¶ 43. On Sunday, April 14, she was removed from work communications and replaced with a different inspector. *Id*. ¶¶ 44–45. At the hearing on August 18, 2026, McCullough noted that she submitted her resignation on Friday, April 12, 2024. As McCullough had already submitted her resignation, she cannot assert that MDM's activities on April 13 and April 14 made her reasonably believe that she was about to be terminated and that belief caused her resignation—she had already resigned. *Cf. Deedrich v. Danville Redevelopment & Hous. Auth.*, No. 4:24CV00008, 2025 WL 1265536, at *4 (W.D. Va. Apr. 30, 2025) (holding that intolerability was met when the plaintiff resigned after she "was pressured to sign a performance improvement plan and received information that Board members were planning to fire her when an email was accidentally forwarded to her stating that her recent action was 'the last straw'"). Intolerability based on imminent termination requires a showing that the plaintiff resigned because of an unequivocal, imminent threat of termination. *Bauer*, 25 F. Supp. 3d at 852. Here, McCullough's only allegation that she was threatened with termination

*before* she resigned on April 12, 2024, was an email from February 1, 2024, expressing her belief that MDM wanted to get rid of her. Dkt. 41 ¶ 40(x)(iii). That allegation is insufficient.

*4. Aggregated Intolerability*

Finally, McCullough again argues that aggregation of her allegations shows that MDM deliberately created an intolerable work environment in response to her protected activity. McCullough is correct that intolerability is assessed considering the totality of the circumstances. *Deedrich*, 2025 WL 1265536, at *4. However, this case stands in a unique posture because it combines constructive discharge with a *Bowman* claim. Unlike a sexual harassment or hostile work environment claim, McCullough bears the burden of pleading that any alleged intolerability is causally related to her protected activity. The issue is therefore (1) which circumstances should be considered to assess intolerability in the totality of the circumstances and (2) whether those aggregated circumstances are sufficient to show intolerability.

To state a *Bowman* claim, termination must be caused by the plaintiff's protected activity. *See Rowan*, 559 S.E.2d at 711 (holding that the third category of Bowman claims requires that termination is *for* refusal to engage in a criminal act) (emphasis added). The doctrine of constructive discharge mirrors that requirement—intolerable conditions must be imposed to coerce the employee to resign. *Bristow*, 770 F.2d at 1255 ("An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his coworkers."). Therefore, when constructive discharge serves to fulfill the termination requirement in a *Bowman* claim, the intolerable conditions must be imposed in response to the plaintiff's protected activity in addition to the standard requirement that the conditions are deliberately calculated to force resignation. Therefore, the

"totality of the circumstances" considered is those intolerable conditions that were imposed in response to her protected activity.

Applying these principles to this case, only McCullough's claims that are (1) non-conclusory and (2) plausibly causally linked to her reporting activity can be aggregated to assess intolerability. Allegations that meet those requirements include refusal to address her complaints of a hostile workplace, unfair performance reports, removal from the schedule, denial of requests for time off, and requirement that she work with a previous sexual harasser. Dkt. 41 ¶¶ 40(g), 40(i), 40(o), 40(q) 40(v). Many of McCullough's other allegations are conclusory and therefore cannot be aggregated. Although McCullough alleges that "as she took stances against regulatory fraud, the [sexual] harassment increased," *id.* ¶ 40(d), she also alleges that sexual harassment occurred monthly from the beginning of her employment. *Id*. at 40(e), (f). Therefore, that sexual harassment did not occur "to pressure [McCullough] into resignation through the imposition of unreasonably harsh conditions." *Bristow*, 770 F.2d at 1255. Rather, the alleged sexual harassment occurred throughout her employment, and cannot be aggregated to show intolerability because it was not imposed in retaliation to create an intolerable work environment.

As alleged, McCullough's allegations of intolerability that are causally linked to her protected conduct are insufficient to cross the high bar of extreme, atrocious, indecent conduct required for intolerability under Virginia law. *See Johnson*, 52 Va. Cir. at *4. Rather, McCullough's aggregated allegations allege only "frustrating and disappointing condition[s] of employment," *Epperson*, 77 Va. Cir. at *5, and an instance where she was required to work with a sexual harasser. While the totality of the circumstances illustrates an unpleasant work environment, not all the allegedly intolerable acts taken or tolerated are related to her protected activity. The remaining, relevant allegations fail to aggregate into a cognizable claim.

B. Deliberateness

Under Virginia law, McCullough must plausibly allege deliberateness to state a valid claim for constructive discharge. *See* Dkt. 39 at 12–13; *Briggman v. Nexus Servs. Inc.*, No. 5:18-CV-00047, 2018 WL 6517464, at *5 (W.D. Va. Dec. 11, 2018); *Deedrich*, 2025 WL 1265536, at *6. "Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit.'" *Epperson*, 77 Va. Cir. at *6 (quoting *Bristow*, 770 F.2d at 1255). If all employees are treated identically, a particular employee cannot claim that intolerable conditions show that the employer intended the employee to resign. *Id*. That said, "[i]ntent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." *Id*. Pervasive alleged abuse can support the inference of deliberateness. *Padilla*, 63 Va. Cir. at *5.

McCullough alleges that she raised concerns of sexual harassment and an intolerable working environment to MDM management repeatedly. Dkt. 41 ¶¶ 40(g), (h)–(n), (p). At this stage of proceedings, allegations of MDM's failure to act would be sufficient to demonstrate deliberateness if the work environment were intolerable. Because McCullough fails to plausibly allege intolerability that is causally connected to her protected activity, the deliberateness prong is also insufficient.

## IV. Conclusion

For purposes of this motion to dismiss, McCullough has alleged sufficient facts that she refused her employer's demands that she engage in illegal conduct. McCullough also demonstrates that her workplace was unpleasant. However, the allegations about the conditions McCullough faced at the worksite lack the causal connection required to support a constructive discharge claim because of a *Bowman* violation by MDM. Accordingly, MDM's motion to

dismiss is **GRANTED**. McCullough has been provided with two previous opportunities to cure deficiencies in her complaints. As she still fails to state a claim, McCullough's Second Amended Complaint is **DISMISSED** with prejudice.

An appropriate Order will follow.

Entered: September 4, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge